1   Tatyana Evgenievna Drevaleva

2   1063 Gilman Dr.

3   Daly City, CA, 94015

4   415-806-9864, tdrevaleva@gmail.com

5   Plaintiff in Pro Per

FILED

MAY 16 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

6

7               THE UNITED STATES DISTRICT COURT

8                  FOR NORTHERN CALIFORNIA

9

10                                                          LB

11

12   Tatyana E. Drevaleva          )   **CV 19 2665**
                                   )
13                                 )
            Plaintiff,             )
14                                 )
              vs.                  )   Complaint for Employment
15                                 )   Discrimination.
     1)  The U.S. Department of Veterans Affairs )
16                                 )   Demand for a Jury Trial.
     2)  Mr. Robert Wilkie in his capacity as an )
17                                 )
         acting Secretary of the U.S. Department )
18                                 )
         of Veterans Affairs       )
19                                 )
              Defendants.          )
20                                 )
                                   )
21   Facility:                     )
                                   )
22   West Los Angeles Medical Center )
                                   )
23   11301 Wilshire Blvd,          )
                                   )
24   Los Angeles, CA 90073         )
                                   )
25

26   1.  Comes now Plaintiff Tatyana E. Drevaleva and submits a Complaint for Employment

27       Discrimination.

28

                    Complaint for Employment Discrimination.

2. **Jurisdiction**: The District court has jurisdiction over this complaint because: a) the Defendants are the U.S. Department of Veterans Affairs and the Secretary of the U.S. Department of Veterans Affairs, b) there are Federal questions involved such as Pregnancy Discrimination, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 (the ADEA), and the Rehabilitation Act of 1973

3. **Venue** is appropriate in this Court:

   a) I am alleging Age discrimination, and, under 29 U.S. Code §633a, I can bring a civil action in any Federal district court

   b) I am alleging Title VII discrimination. Under 42 U.S. Code § 2000e–5(f)(3), I have a right to maintain this action in both California and New Mexico, "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office...."

   c) I am alleging Disability Discrimination in Federal employment and Failure to Provide me with Reasonable Accommodations. This is a violation of the Rehabilitation Act of 1973 or 29 U.S.C. §791 and 794.

      Read 29 U.S.C. §794(d),

      "(d) Standards used in determining violation of section

      The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied

Complaint for Employment Discrimination.

under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510,[1] of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment."

Read 42 U.S. Code § 12117 – Enforcement

"(a) Powers, remedies, and procedures

The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."

Therefore, under the Rehabilitation Act of 1973, I also have a right to maintain my lawsuit in both California and New Mexico.

4. Plaintiff Tatyana Drevaleva is a former employee of the Raymond G. Murphy Veterans Affairs Medical Center in Albuquerque, NM and an applicant for employment at the West Los Angeles VAMC.

## MEMORANDUM OF POINTS AND AUTHORITIES

**Introduction.**

5. I was fired from my full time job as a Medical Instrument Technician (Electrocardiograph) from the Raymond G. Murphy VAMC in Albuquerque, NM in 2017 for my attempt to get pregnant.

6. I started to work as a full time probationary Medical Instrument Technician *Electrocardiograph) at the Raymond G. Murphy VAMC in Albuquerque, NM on April 03, 2017. In May 2017, I informed Manager Ms. Carla Dunkelberger about my need to

Complaint for Employment Discrimination.

go to Russia to refill a prescription of hormonal pills named Jeanine that were not available in the United States and that were prescribed to me by my Russian physician. Also, I informed Ms. Dunkelberger about my need to go to Russia to perform an In-Vitro Fertilization (IVF) procedure. On May 17, 2017, I obtained a verbal permission of Assistant Manager Mr. Phil Johnson to go to Russia to refill a prescription of the hormonal pills and to perform an IVF procedure. On May 17, 2017, following Mr. Johnson's directions, I submitted a Request for Leave Without Pay for my upcoming trip to Russia. Also, before I departed to Russia, I provided both Ms. Dunkelberger and Mr. Johnson with a copy of the medical documentation from my Russian OB/GYN on Russian language. While being in Russia, I emailed the translated copy of this medical documentation to both Ms. Dunkelberger and Mr. Johnson. While being in Russia, on July 03, 2017, I got an email from Ms. Dunkelberger informing me that my full time employment at the Raymond G. Murphy VAMC has been cancelled. Before getting this email, I didn't receive any Notice, and I was not given any opportunity to be heard.

7. In 2018, I applied for a full time position of a Medical Instrument Technician (Electrocardiograph) at the West Los Angeles VAMC. When I submitted form vha-10-2850c, I answered Question 31 "Within the last five years have you been discharged from any position for any reason?" I answered that I had been fired from the Raymond G. Murphy VAMC in 2017 because of my trip to Russia to solve some of my medical issues.

8. I had a telephonic job interview in June 2017. During the interview, the interviewer asked me the question whether I was fired from my previous job at the Raymond G. Murphy VAMC as I wrote in form vha-10-2850c. I said that yes, I had been fired from the Raymond G. Murphy VAMC for taking a time off for my trip to Russia to solve some of my medical issues. During the interview itself, I didn't disclose that these issues were related to pregnancy. The interviewer asked me the question whether, if hired, I would need to take another time off for my other trip to Russia for a follow up. I said that yes, I

Complaint for Employment Discrimination.

would need to take another time off to go to Russia for a follow up. I said that currently I didn't have money to go to Russia. I also said that when I need to go to Russia for a follow up to solve my medical issues, I will obtain the permission of the Manager.

9. I was not hired for this job. I emailed the West Los Angeles VAMC, and I asked to provide me with the reasons why I was not hired. I never heard back.

10. I contacted the Office of Resolution Management, and I had the first telephonic Mediation in September 2018. During the Mediation, I disclosed that at that time I was 51 yo, I didn't have children, I took a time off while working at the Raymond G. Murphy VAMC for my trip to Russia to undergo the In-Vitro Fertilization procedure, and I was fired when I was in Russia without being given both a Notice and an opportunity to be heard. I respectfully asked the West Los Angeles VAMC to rehire me back to work because I was fully qualified for this position. The West Los Angeles VAMC refused to rehire me back to work.

11. I filed a formal EEO Complaint. I timely answered the Investigator's questions. Up to today, the Office of Resolution Management hasn't issued any Determination. In March 2019, I had the Second telephonic Mediation with the Los Angeles VAMC. I explained again the circumstances about terminating my job at the Raymond G. Murphy VAMC – that I was over 50 yo, that I didn't have children, that Assistant Manager Mr. Phil Johnson gave me a verbal permission to go to Russia to undergo the IVF attempt, and that I was fired when I was in Russia without being given both a Notice and an opportunity to be heard. I also discussed the results of the investigation. The Investigation revealed that the Agency hired a male Medical Instrument Technician. I respectfully asked the West Los Angeles VAMC to rehire me back to work and to compensate me with a lost salary and benefits because, as a victim of employment discrimination committed by the Los Angeles VAMC, I was entitled to getting the lost salary and benefits. The Los Angeles VAMC refused to rehire me. I never heard back from the Office of Resolution Management and from the Los Angeles VAMC.

Complaint for Employment Discrimination.

12. A related case is pending at the District Court of Northern California *Drevaleva v. The U.S. Department of Veterans Affairs et al.*, case No. 3:18-cv-03748-WHA. This is a Complaint for Employment Discrimination against the Raymond G. Murphy VAMC for discriminating against my desire to get pregnant, against my sex (I am a female), against my age 50 yo at that time, and against my temporary disability that was related to taking a time off to undergo the IVF procedure. Also, I listed other causes of action such as the Libel, the Constitutional violations, and the Intentional Infliction of Emotional Distress. Another related case is pending at the District Court of Northern California *Drevaleva v. The United States of America et al.*, case No. 4:19-cv-01454-KAW. It is a Petition for Judicial review against the Minneapolis VAMC for terminating my full time job offer in 2018.

**Legal Standard.**

13. **First cause of action – Pregnancy Discrimination. The Agency discriminated and didn't hire me for my attempt to get pregnant.**

14. Read 42 U.S.C. §2000e(k), "The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise."

15. Read 29 CFR Appendix to Part 1604, Questions and Answers on the Pregnancy Discrimination Act, Public Law 95-555, 92 Stat. 2076 (1978),

16. "5. Q. If, for pregnancy-related reasons, an employee is unable to perform the functions of her job, does the employer have to provide her an alternative job? A. An employer is

Complaint for Employment Discrimination.

required to treat an employee temporarily unable to perform the functions of her job because of her pregnancy-related condition in the same manner as it treats other temporarily disabled employees, whether by providing modified tasks, alternative assignments, disability leaves, leaves without pay, etc…

17. 6. Q. What procedures may an employer use to determine whether to place on leave as unable to work a pregnant employee who claims she is able to work or deny leave to a pregnant employee who claims that she is disabled from work? A. An employer may not single out pregnancy-related conditions for special procedures for determining an employee's ability to work. However, an employer may use any procedure used to determine the ability of all employees to work. For example, if an employer requires its employees to submit a doctor's statement concerning their inability to work before granting leave or paying sick benefits, the employer may require employees affected by pregnancy-related conditions to submit such statement. Similarly, if an employer allows its employees to obtain doctor's statements from their personal physicians for absences due to other disabilities or return dates from other disabilities, it must accept doctor's statements from personal physicians for absences and return dates connected with pregnancy-related disabilities.

18. 7. Q. Can an employer have a rule which prohibits an employee from returning to work for a predetermined length of time after childbirth? A. No.

19. 8. Q. If an employee has been absent from work as a result of a pregnancy-related condition and recovers, may her employer require her to remain on leave until after her baby is born? A. No. An employee must be permitted to work at all times during pregnancy when she is able to perform her job.

Complaint for Employment Discrimination.

20. 9. Q. Must an employer hold open the job of an employee who is absent on leave because she is temporarily disabled by pregnancy-related conditions? A. Unless the employee on leave has informed the employer that she does not intend to return to work, her job must be held open for her return on the same basis as jobs are held open for employees on sick or disability leave for other reasons."

21. In 1976, in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), the Supreme Court confronted the question of whether pregnancy discrimination qualified as discrimination "because of sex" under Title VII of the 1964 Civil Rights Act. The Court concluded that "[t]he legislative history of Title VII's prohibition of sex discrimination[,] . . . notable primarily for its brevity," shed little light on this question. In place of legislative history, the Court turned to "tradition" for guidance in interpreting the statute. "Traditionally," the Court asserted, discrimination was defined as the division of individuals into two groups on the basis of a protected trait — as when Jim Crow laws reserved some water fountains for whites and others for blacks. Thus, the Court reasoned that an employment practice would not have been considered discrimination "because of sex," circa 1964, unless it divided men and women into two groups, perfectly differentiated along biological sex lines. The Court suggested that to interpret Title VII's sex provision in any other way would be "to depart from the longstanding meaning of 'discrimination,'" which must have guided Congress when it passed the Civil Rights Act. Pledging deference to the legislature, and fidelity to tradition, the Court held in Gilbert that pregnancy discrimination did not constitute discrimination "because of sex" because it did not fall within the longstanding parameters of that term."

22. Read *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), "Geduldig established the proposition that a pregnancy classification [429 U.S. 125, 149] standing alone cannot be said to fall into the category of classifications that rest explicitly on "gender as such," 417 U.S., at 496 n. 20."

Complaint for Employment Discrimination.

23. Read *Hall v. Nalco Co.*, No. 06-3684, 7th Circuit (2008), "Cheryl Hall maintains she was fired by Nalco Company for taking time off from work to undergo in vitro fertilization after being diagnosed with infertility.... Although infertility affects both men and women, Hall claims she was terminated for undergoing a medical procedure-a particular form of surgical impregnation-performed only on women on account of their childbearing capacity. Because adverse employment actions taken on account of childbearing capacity affect only women, Hall has stated a cognizable sex-discrimination claim under the language of the PDA."

24. Read the case law cited by the 7th Circuit in *Hall v Nalco* to support its holding that the infertility treatment violates the Pregnancy Discrimination Act:

1) *Accord Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 911 F.Supp. 316, 320 (N.D.Ill.1995) (discharge of woman for undergoing infertility treatment constitutes discharge because of her capacity to become pregnant, stating a claim under Title VII)

2) *Pacourek v. Inland Steel Co.*, 858 F.Supp. 1393, 1403 (N.D.Ill.1994) (termination for undergoing IVF violates Title VII because "employers are to treat a woman's medical infertility with neutrality-the same general command of the PDA regarding pregnancy itself").

**25. Second case of action – Sex Discrimination. The Agency did not hire me because I am a woman. The Agency hired a male employee Medical Instrument Technician (Electrocardiograph.)**

26. Read Title VII, Civil Rights Act of 1964, as amended (42 U.S. Code § 2000e–16 - Employment by Federal Government),

"(a) *Discriminatory practices prohibited; employees or applicants for employment subject to coverage.* All personnel actions affecting employees or applicants for employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin."

Complaint for Employment Discrimination.

"(e) *Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity.* Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government."

Within 90 days of receipt of notice of final action taken by a department, agency ... on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, ... or after one hundred and eighty days from the filing of the initial charge with the department, agency, ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

"(e) *Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity.* Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government."

27. Read the Executive Order 11478 -- Equal employment opportunity in the Federal Government,

"Under and by virtue of the authority vested in me as President of the United States by the Constitution and statutes of the United States, it is ordered as follows:

**Section 1**. It is the policy of the Government of the United States to provide equal opportunity in Federal employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, national origin, handicap, or age, and to promote the full

Complaint for Employment Discrimination.

realization of equal employment opportunity through a continuing affirmative program in each executive department and agency. This policy of equal opportunity applies to and must be an integral part of every aspect of personnel policy and practice in the employment, development, advancement, and treatment of civilian employees of the Federal Government.

**Sec. 2.** The head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in section 1. It is the responsibility of each department and agency head, to the maximum extent possible, to provide sufficient resources to administer such a program in a positive and effective manner; assure that recruitment activities reach all sources of job candidates; utilize to the fullest extent the present skills of each employee; provide the maximum feasible opportunity to employees to enhance their skills so they may perform at their highest potential and advance in accordance with their abilities; provide training and advice to managers and supervisors to assure their understanding and implementation of the policy expressed in this Order; assure participation at the local level with other employers, schools, and public or private groups in cooperative efforts to improve community conditions which affect employability; and provide for a system within the department or agency for periodically evaluating the effectiveness with which the policy of this Order is being carried out."

28. Read the Pregnancy Discrimination Act of 1978,

"That section 701 of the Civil Rights Act of 1964 is amended by adding at the end thereof the following new subsection:

"(k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as

Complaint for Employment Discrimination.

other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise…"

29. **Third cause of action – Age Discrimination. The Agency didn't hire me because I was 51 yo.**

30. Read The Age Discrimination in Employment Act (ADEA) – 29 U.S.C. §623,

"(a) Employer practices. It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age…"

31. Read the Age Discrimination in Employment Act (ADEA) or 29 U.S. Code § 633a - Nondiscrimination on account of age in Federal Government employment,

"(c) Civil actions; jurisdiction; relief

Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."

32. Read 29 U.S. Code § 626 - Recordkeeping, investigation, and enforcement

"(c) Civil actions; persons aggrieved; jurisdiction; judicial relief; termination of individual action upon commencement of action by Commission; jury trial

(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter…

Complaint for Employment Discrimination.

(2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action."

33. Read 29 CFR 1625.2 - Discrimination prohibited by the Act, "It is unlawful for an employer to discriminate against an individual in any aspect of employment because that individual is 40 years old or older."

**34. Fourth cause of action – Disability Discrimination, Failure to Provide me with Reasonable Accommodations in violation of the Rehabilitation Act of 1973. The Agency didn't hire me because it didn't want to provide me with a reasonable accommodation for my follow up trip to Russia to undergo another IVF procedure.**

35. Read the Executive Order 13548 of July 26, 2010 signed by President Barack Obama that intended to make the Federal Government a model for hiring and retaining individuals with disabilities,

"Sec. 3. Increasing Agencies' Retention and Return to Work of Individuals with Disabilities. (a) The Director of the Office of Personnel Management, in consultation with the Secretary of Labor and the Chair of the Equal Employment Opportunity Commission, shall identify and assist agencies in implementing strategies for retaining Federal workers with disabilities in Federal employment including, but not limited to, training, the use of centralized funds to provide reasonable accommodations, increasing access to appropriate accessible technologies, and ensuring the accessibility of physical and virtual workspaces.

Sec. 4. *Definitions.* (a) ''Disability'' shall be defined as set forth in the ADA Amendments Act of 2008."

36. Read The Americans with Disabilities Act of 1990 (ADA) – 42 U.S.C. §12102,

"(1) Disability. The term "disability" means, with respect to an individual—

Complaint for Employment Discrimination.

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

(2) Major life activities

(B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including … reproductive functions.

(3) Regarded as having such an impairment. For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

(4) Rules of construction regarding the definition of disability

(C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(9) Reasonable accommodation. The term "reasonable accommodation" may include—

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, … and other similar accommodations for individuals with disabilities."

37. Read 42 U.S.C. §12112. Discrimination

"(a) *General rule*. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Complaint for Employment Discrimination.

38. Read the Opinion of the U.S. Supreme Court in *Bragdon v Abbott*, 524 U.S. 624 (1998),

"From the outset, however, the case has been treated as one in which reproduction was the major life activity limited by the impairment. It is our practice to decide cases on the grounds raised and considered in the Court of Appeals and included in the question on which we granted certiorari. See, e.g., *Blessing v. Freestone*, 520 U.S. 329, 340, n. 3 (1997) (citing this Court's Rule 14.1(a)); *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995). We ask, then, whether reproduction is a major life activity.

We have little difficulty concluding that it is. As the Court of Appeals held, "[t]he plain meaning of the word 'major' denotes comparative importance" and "suggest[s] that the touchstone for determining an activity's inclusion under the statutory rubric is its significance." 107 F.3d, at 939, 940. Reproduction falls well within the phrase "major life activity." Reproduction and the sexual dynamics surrounding it are central to the life process itself."

"…the Rehabilitation Act regulations support the inclusion of reproduction as a major life activity, since reproduction could not be regarded as any less important than working and learning."

39. Read the Opinion of the U.S. Supreme Court in *Geduldig v. Aiello*, 417 U.S. 484 (1974),

"Disabilities caused by pregnancy, however, like other physically disabling conditions covered by the Code, require medical care, often include hospitalization, anesthesia and surgical procedures, and may involve genuine risk to life. Moreover, the economic effects [417 U.S. 484, 501] caused by pregnancy-related disabilities are functionally indistinguishable from the effects caused by any other disability: wages are lost due to a physical inability to work, and medical expenses are incurred for the delivery of the child and for postpartum care."

Under *Geduldig*, employers are obligated to provide employees with a Sick Leave and Accumulated Annual Leave to treat pregnancy-related disabilities, "Therefore, it follows that any

Complaint for Employment Discrimination.

alleged financial burden on the State will be greatly diminished when employers adhere to Title VII and treat pregnancy-related disabilities the same as other disabilities by allowing women to use accumulated sick leave and possibly annual leave as well." Brief for United States Equal Employment Opportunity Commission as Amicus Curiae 21 n. 12." (Footnote 8).

40. **Fifth cause of action – Intentional Infliction of Emotional Distress (IIED).**

41. The Agency knowingly put me into a severe emotional distress because it failed to hire me, failed to re-hire me after two Mediations, deprived me a source of income, deprived me an opportunity to undergo another IVF procedure, and put me in horror for many months.

42. I need to establish four elements of IIED:

a) The defendant acts. The Agency discriminated and me against my age, my sex, my desire to get pregnant, and my disability that was related to taking a time off to undergo an IVF procedure. The Agency didn't hire me and refused to re-hire me after two Mediations.

b) The defendant's conduct is outrageous. It is outrageous to deprive me an opportunity to have children. It is outrageous not to hire me. It is outrageous to deprive me a source of income and therefore to deprive me an opportunity to go to Russia again and perform another IVF attempt again. It is outrageous to deprive me an opportunity to work and to serve the Community. My skills of an EKG/Monitor Technician are deteriorating

c) The defendant acts for the purpose of causing the victim emotional distress so severe that it could be expected to adversely affect mental health. The Agency's behavior could be expected to adversely affect my mental health. I am 52 yo, unemployed, without a family and children.

d) The defendant's conduct causes such distress. After two Mediations, the Agency refused to re-hire me. Up to today, I am unemployed, without the source of income, without a family, without a home and a car, and without an opportunity to study and to develop my professional career.

Complaint for Employment Discrimination.

Source: https://www.law.cornell.edu/wex/intentional_infliction_of_emotional_distress

**43. How the Plaintiff was affected by the discriminatory actions of the Agency.**

As a result of discrimination, I have experienced the following adverse events:

1) Being unemployed for almost two years, losing my EKG reading skills

2) Losing a source of income and the Unemployment Insurance benefits

3) Not being able to pay for another IVF attempt and for the surrogate mother

4) Not being able to create a family and to have children

5) Not being able to purchase property such as a car and a house

6) Not being able to pay my debts off

7) Not being able to study, to obtain a degree in the United States, and to obtain a better paid job

8) Suffering from depression, mental anguish, chest pains, and other physical and emotional conditions that negatively affect my well-being.

**44. Plaintiff's Demand for Damages.**

**General Provisions.**

45. Read 2 U.S. Code § 1311 - Rights and protections under title VII of Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, Rehabilitation Act of 1973, and title I of Americans with Disabilities Act of 1990,

(a) Discriminatory practices prohibited. All personnel actions affecting covered employees shall be made free from any discrimination based on—

(1) race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–2);

(2) age, within the meaning of section 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a); or

Complaint for Employment Discrimination.

(3) disability, within the meaning of section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and sections 102 through 104 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112–12114).

(b) Remedy

(1) Civil rights. The remedy for a violation of subsection (a)(1) shall be—

(A) such remedy as would be appropriate if awarded under section 706(g) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(g)); and

(B) such compensatory damages as would be appropriate if awarded under section 1981 of title 42, or as would be appropriate if awarded under sections 1981a(a)(1), 1981a(b)(2), and, irrespective of the size of the employing office, 1981a(b)(3)(D) of title 42.

(2) Age discrimination. The remedy for a violation of subsection (a)(2) shall be—

(A) such remedy as would be appropriate if awarded under section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)); and

(B) such liquidated damages as would be appropriate if awarded under section 7(b) of such Act (29 U.S.C. 626(b)).

In addition, the waiver provisions of section 7(f) of such Act (29 U.S.C. 626(f)) shall apply to covered employees.

(3) Disabilities discrimination. The remedy for a violation of subsection (a)(3) shall be—

(A) such remedy as would be appropriate if awarded under section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)) or section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)); and

(B) such compensatory damages as would be appropriate if awarded under sections 1981a(a)(2), 1981a(a)(3), 1981a(b)(2), and, irrespective of the size of the employing office, 1981a(b)(3)(D) of title 42.

46. Governmental Agency is not relieved from liability for violation of Title VII.

Complaint for Employment Discrimination.

1    Read 42 U.S. Code §2000e–16 - Employment by Federal Government,

2    "(e) Government agency or official not relieved of responsibility to assure

3    nondiscrimination in employment or equal employment opportunity

4    Nothing contained in this Act shall relieve any Government agency or official of its or his

5    primary responsibility to assure nondiscrimination in employment as required by the

6    Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to

7    equal employment opportunity in the Federal Government.

8    (f) Section 2000e–5(e)(3) of this title applicable to compensation discrimination

9    Section 2000e–5(e)(3) of this title shall apply to complaints of discrimination in

10    compensation under this section."

11

12    47. Read 42 U.S. Code §2000e–5(3),

13    "(A) For purposes of this section, an unlawful employment practice occurs, with respect

14    to discrimination in compensation in violation of this subchapter, when a discriminatory

15    compensation decision or other practice is adopted, when an individual becomes subject to a

16    discriminatory compensation decision or other practice, or when an individual is affected by

17    application of a discriminatory compensation decision or other practice, including each time

18    wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision

19    or other practice.

20    (B) In addition to any relief authorized by section 1981a of this title, liability may accrue

21    and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of

22    back pay for up to two years preceding the filing of the charge, where the unlawful employment

23    practices that have occurred during the charge filing period are similar or related to unlawful

24    employment practices with regard to discrimination in compensation that occurred outside the

25    time for filing a charge."

26

27    48. Read 42 U.S.C. 2000e-5(e)(3)

28

Complaint for Employment Discrimination.

1    "(3) (A) For purposes of this section, an unlawful employment practice occurs, with

2    respect to discrimination in compensation in violation of this subchapter, when a discriminatory

3    compensation decision or other practice is adopted, when an individual becomes subject to a

4    discriminatory compensation decision or other practice, or when an individual is affected by

5    application of a discriminatory compensation decision or other practice, including each time

6    wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision

7    or other practice.

8        (B) In addition to any relief authorized by section 1981a of this title, liability may accrue

9    and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of

10    back pay for up to two years preceding the filing of the charge, where the unlawful employment

11    practices that have occurred during the charge filing period are similar or related to unlawful

12    employment practices with regard to discrimination in compensation that occurred outside the

13    time for filing a charge."


15    49. Read 42 U.S.C. 2000e–5(g),

16        "(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay;

17    reduction of back pay; limitations on judicial orders

18        (1) If the court finds that the respondent has intentionally engaged in or is intentionally

19    engaging in an unlawful employment practice charged in the complaint, the court may enjoin the

20    respondent from engaging in such unlawful employment practice, and order such affirmative

21    action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of

22    employees, with or without back pay (payable by the employer, employment agency, or labor

23    organization, as the case may be, responsible for the unlawful employment practice), or any

24    other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a

25    date more than two years prior to the filing of a charge with the Commission. Interim earnings or

26    amounts earnable with reasonable diligence by the person or persons discriminated against shall

27    operate to reduce the back pay otherwise allowable.

28

Complaint for Employment Discrimination.

(2) (A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

(B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A)."


50. Read 42 U.S.C. §1981a (became effective in 1991),

"(b) Compensatory and punitive damages

(1) Determination of punitive damages

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(2) Exclusions from compensatory damages

Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5(g)].

Complaint for Employment Discrimination.

(3) Limitations

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

**51. Plaintiff's actual demand for damages.**

52. **Part 1.** Demand for appointment of an Attorney to represent my whole case. Demand for proceeding my Title VII, Age Discrimination, and Rehabilitation Act cases of action without payment of fees, costs, or other securities.

53. Read 42 U.S.C. §2000e-5(f)(1), "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."

54. See the 2009 update of 42 U.S.C. 2000e-5,

"EFFECTIVE DATE OF 2009 AMENDMENT Pub. L. 111–2, § 6, Jan. 29, 2009, 123 Stat. 7, provided that: "This Act [amending this section and section 2000e–16 of this title and sections 626, 633a, and 794a of Title 29, Labor, and enacting provisions set out as notes under this section and section 2000a of this title], and the amendments made by this Act, take effect as if enacted on May 28, 2007 and apply to all claims of discrimination in compensation under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), title I and section 503 of the Americans with Disabilities Act of 1990 [42 U.S.C. 12111 et seq., 12203], and sections 501 and 504 of the Rehabilitation Act of 1973 [29 U.S.C. 791, 794], that are pending on or after that date."

Complaint for Employment Discrimination.

55. **Part 2.** Demand for as Jury trial for all causes of action under Article III, Section 2 of The U.S. Constitution, The Sixth Amendment to The U.S. Constitution, 42 U.S. Code §1981a(c)(1), and The Seventh Amendment to The U.S. Constitution. Demand to order Defendants to pay all costs of the lawsuit and the costs of a Jury Trial.

56. Read 42 U.S.C. §2000e-5(c), 42 U.S.C. §2000e-5(d), and 42 U.S.C. §2000e-5(e)(1) which describe the criminal proceeding for a Title VII violation.

57. Read Title XI of the Civil Rights Act of 1964 or 42 U.S. Code § 2000h which authorizes the Courts to initiate a criminal action for violation of Title VII.

58. Read the 2009 Amendment to Title VII cited above saying that the provisions of Title VII extend to the ADEA and the Rehab. Act of 1973.

59. Read the texts of Article III, Section 2 of The U.S. Constitution and The Sixth Amendment to The U.S. Constitution which direct the Courts to try crimes committed by employers who violated Title VII, the ADEA, and the Rehab, Act by a Grand Jury in the State where the crime occurred.

60. Read 42 U.S. Code §1981a(c)(1), "

"(c) Jury trial. If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury."

61. Also, I am demanding a Jury trial for the Pregnancy discrimination cause of action under the Seventh Amendment to The U.S. Constitution.

62. **Part 3**. IMMEDIATE rehiring to work for a full time permanent position with all benefits (medical, dental, vision, thrift savings plan 401k, flexible spending account, life

Complaint for Employment Discrimination.

insurance, sick leave, paid vacation, eligibility under the FMLA, and other benefits I am eligible to as a permanent full time employee) at any VAMC.

63. **Part 4**. Promotion – hiring for a higher paying position. See *Donlin v. Philips Lighting North America Corporation d/b/a Philips Lighting Company, Nos.* 07-4060, 07-4081, 3rd Circuit (2009), "the law requires that she find new employment that is "better or substantially equivalent." *Ford Motor*, 458 U.S. at 236, 102 S.Ct. 3057. "Substantially equivalent" employment affords "virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Booker v. Taylor Milk Co.,* 64 F.3d 860, 866 (3d Cir.1995)."

64. **Part 5.** Ordering the VA to pay for my education.

65. **Part 6.** Back Pay is available under Title VII, the ADEA, and the Rehab. Act. Once the plaintiff establishes that unlawful discrimination caused her loss, she is entitled to back pay. See *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975) (holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole).

66. **Elements of the Back Pay award.**

   1) <u>Wages and Salary</u>. The plaintiff bears the burden of establishing the value of her lost salary, but the plaintiff is not required to establish the exact dollar amount. See *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999) (holding that "uncertainties [in the calculation of back pay] are resolved against a discriminating employer"). The plaintiff may also recover overtime, shift differentials, commissions, tips, cost-of-living increases, merit increases, and

Complaint for Employment Discrimination.

raises due to promotion by showing that she would have earned those items absent discrimination. See, e.g., *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1563 (11th Cir. 1986)

2)  Fringe benefits. Similarly, the plaintiff bears the burden of proof for claims for fringe benefits, such as vacation pay, pension and retirement benefits, stock options and bonus plans, savings plan contributions, cafeteria plan benefits, profit-sharing benefits, and medical and life insurance benefits. The plaintiff must demonstrate her entitlement to and the value of such benefits with reasonable certainty. Vaughn v. Sabine Cnty., 104 F. App'x. 980, 985 (5th Cir. 2004) (a jury may consider the value of employee benefits in making a back pay determination so long as evidence in the record supports a calculation). When the employee would have been obligated to pay part of the cost of benefits, that portion of the cost may reduce the back pay award.

3)  Pre-Judgment Interest. The Supreme Court established a strong presumption that prejudgment interest on back-pay awards should be granted in employment discrimination cases. See *Loeffler v. Frank*, 486 U.S. 549, 557-58 (1988) ("Prejudgment interest may be awarded in a suit against the Postal Service brought under Title VII.").

4)  Negative Tax Consequences. To receive additional back pay to compensate the increased tax liability of a lump-sum back pay in a single year, the plaintiff need to prove the amount of increased income tax burden. See *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 447 (E.D. Pa. 2000) (allowing the recovery of the increased tax liability from the lump sum award of back pay and front pay where expert testimony was provided specifying the award's tax consequences).

5)  The period of recovery for back pay awards. Back pay is generally awarded from the occurrence of the alleged discrimination until the harm suffered by the plaintiff is redressed. See *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th

Complaint for Employment Discrimination.

Cir. 1986). The plaintiff must demonstrate the amount of economic harm she has suffered as a result of the alleged discrimination. I am requesting the back pay award from the time of the job interview in June 2018 <u>to the moment when I have three babies.</u>

67. **Part 7. Front Pay.**

Front pay compensates the plaintiff for the future effects of discrimination when reinstatement would be an appropriate, but not feasible, remedy or for the estimated length of the interim period before the plaintiff could return to her former position. See *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 850 (2001); see, e.g., *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 87-88 (3d Cir. 2009) (affirming the award of 10-year front-pay to a temporary employee who was not offered a permanent position because of unlawful sex discrimination). I am requesting the Front Pay at the amount of the Jury's discretion.

68. **Part 8.**  Compensatory damages.

Under the 2009 Amendment to 42 U.S.C. §2000e-5, the compensation described in Title VII extends to the ADEA and the Rehabilitation Act of 1973.

1) <u>Title VII.</u>

I am requesting $300,000.00 for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" as described in 42 U.S. Code § 1981a(b)(3). The cap on damages recoverable under Title VII does not limit front pay, which is not compensatory damages, or recovery under state antidiscrimination statutes. See *Pollard*, 532 U.S. at 852.

2) <u>The ADEA.</u>

Under the 2009 update of 42 U.S.C. 2000e-5 (see above), the compensation in the ADEA claims is the same as the compensation in Title VII claims.

Complaint for Employment Discrimination.

I am requesting $300,000.00 00 for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" as described in 42 U.S. Code § 1981a(b)(3). The cap on damages recoverable under Title VII does not limit front pay, which is not compensatory damages, or recovery under state antidiscrimination statutes. See *Pollard*, 532 U.S. at 852.

Additionally, I am requesting liquidated damages in the amount of both back pay, front pay, and benefits.

Under the ADEA, the court must award liquidated damages once the plaintiff established that the employer's willful violations. See Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 398 (5th Cir. 2002).

3) <u>The Rehabilitation Act of 1973.</u>

Under the 2009 update of 42 U.S.C. 2000e-5 (see above), the compensation in the ADEA claims is the same as the compensation in Title VII claims.


69. Also, read 29 U.S. Code § 794a - Remedies and attorney fees,

"(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e–5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C.

Complaint for Employment Discrimination.

2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

70. I am entitled to the award of compensatory damages irrespective to the size of the employer under 2 U.S. Code § 1311(b)(3)(B) in the amount of $300,000.00 U.S. Dollars.

71. I am requesting $300,000.00 00 for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" as described in 42 U.S. Code § 1981a(b)(3). The cap on damages recoverable under Title VII does not limit front pay, which is not compensatory damages, or recovery under state antidiscrimination statutes. See Pollard, 532 U.S. at 852.

72. Additionally, I am requesting damages for emotional distress that are available under *Sheely v. MRI Radiology Network, P.A.,* 2007 WL 3087215, at *18 (11th Cir. Oct. 24, 2007). I am asking the Court to impose damages for emotional distress at the amount of the Jury's discretion. I want to request the amount of damages for emotional distress in the amount of five million U.S. dollars.

73. Damages for emotional distress must be supported by competent evidence of genuine injury, but medical evidence is not necessary. *Heaton v. Weitz Co.*, 534 F.3d 882, 891 (8th Cir. 2008); see *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 339 F.3d 52, 63-64 (1st Cir. 2005) (noting that expert medical testimony is not a prerequisite for an emotional distress award). The plaintiff's testimony may be sufficient so long as she offers specific facts as to the nature of her claimed emotional distress and as to the causal connection to the employer's alleged violation. Id.; *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546-47 (4th Cir. 2003).

74. The employer is liable for all harms it inflicted upon an eggshell plaintiff. See *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1286 (7th Cir. 1995).

Complaint for Employment Discrimination.

75. **Part 9**. Future medical expenses for Pregnancy discrimination. The Agency put me into the situation where I need to think about purchasing donor's sperm, donor's eggs, and to hire surrogate Moms. I also need money for my own medical examination and treatment if I still have fertile eggs and I am eligible for future IVF attempts. I am demanding the Agency to pay for all these expenses.

76. **Part 10.** For a Pregnancy discrimination cause of action, I am demanding monetary damages that could have compensatory or punitive effect.

77. "Damages awards that may have a punitive effect" under *Molzof v. United States*, The U.S. Supreme Court, No. 90-838 (1992).

78. Read *Molzof v. United States*,

"Punitive damages" is a legal term of art that has a widely accepted common law meaning; "[p]unitive damages have long been a part of traditional state tort law." *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 255 (1984). Although the precise nature and use of punitive damages may have evolved over time, and the size and frequency of such awards may have increased, this Court's decisions make clear that the concept of "punitive damages" has a long pedigree in the law. "It is a well-established principle of the common law that, in actions of trespass and <u>all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff.</u>" *Day v. Woodworth*, 13 How. 363, 371 (1852). See [502 U.S. 301, 307] also *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 -17 (1991); id., at 25-27); (SCALIA, J., concurring in judgment)."

79. The VAMC deprived me an opportunity to work in my professional field, to earn money, to purchase a car, a house, to get education and a higher paid job, to hire a surrogate Mom for my embryo, and to go to Russia for other IVF attempts.

Complaint for Employment Discrimination.

80. I am demanding to pay me the amount of damages for Pregnancy Discrimination at the amount determined by the Jury.

81. I am demanding this amount of money separately from my Title VII claim because, under *General Electric Co. v. Gilbert*, Pregnancy discrimination is outside of the scope of Title VII.

82. **Part 11.** Attorney's Fees and Costs are available under 42 U.S. Code § 2000e–5(g)(2)(B)(i) for all causes of action. I am entitled to Attorney's Fees for litigating my case myself.

83. **Part 12.** Costs. The VA must pay all costs related to this litigation including the cost of relocation to my new place of work and the cost of renting a place of living for a few months after I am reinstated back to work.

84. **Conclusion.**

Satisfying my demand for damages, the District Court will follow the Congressional intent to end discrimination at workplace and enjoin the Federal Government from committing similar acts of discrimination in the future.

85. **Verification.**

I, a Pro Se Plaintiff Tatyana Drevaleva, am a Party to this action. I have prepared and read the foregoing Complaint for Damages and know its contents. The facts alleged in the Complaint for Damages are within my own knowledge and I know these facts to be true.

I declare under penalty of perjury and under the Federal laws that the foregoing is true and correct and that this verification was executed on this 16th day of May, 2019 at San Francisco, California.

Complaint for Employment Discrimination.

Respectfully submitted,

Date: May 16, 2019          Sign Name:

                            Print Name:  Tatyana E. Drevaleva

# EXHIBITS

**Exhibit 1** - Investigation file.

**Exhibit 2** - Notice of Intention to File a Lawsuit.

**Exhibit 3** - Request to participate in the ADR program.

**Exhibit 4** - Request for a Determination.

Complaint for Employment Discrimination.